USCA DOCKET # 08-35217

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT
## CIVIL APPEALS DOCKETING STATEMENT

### PLEASE ATTACH ADDITIONAL PAGES IF NECESSARY

| | |
|---|---|
| **TITLE IN FULL:**<br><br>KATHIE COSTANICH,<br><br>　　　　Plaintiff,<br><br>v.<br><br>STATE OF WASHINGTON, DEPARTMENT OF SOCIAL AND HEALTH SERVICES (DSHS), SANDRA DURON AND JOHN DOE DURON, CAROL SCHMIDT, and JOHN DOE SCHMIDT, BEVERLY PAYNE, and JOHN DOE PAYNE, JAMES BULZOMI, and JANE DOE BULZOMI, ROBERT STUTZ and JANE DOE STUTZ, INGRID MCKENNY, JOHN DOE MCKENNY,<br><br>　　　　Defendants. | **DISTRICT** : Western District of Washington at Tacoma<br>**JUDGE** Marsha Pechman |
| | **DISTRICT COURT NUMBER:** CV5-0090P |

| | |
|---|---|
| **DATE NOTICE OF APPEAL FILED:**<br>March 18, 2008 | **IS THIS A CROSS-APPEAL?** yes |
| **IF THIS MATTER HAS BEEN BEFORE THIS COURT PREVIOUSLY, PLEASE PROVIDE THE DOCKET NUMBER AND CITATION (IF ANY** | |

**BRIEF DESCRIPTION OF NATURE OF ACTION AND RESULT BELOW:** This is a cross-appeal from the order of the lower court entered February 19, 2008, denying, in part, the defendants' motion for summary judgment seeking dismissal of the plaintiff's federal and state tort claims.

**PRINCIPAL ISSUES PROPOSED TO BE RAISED ON APPEAL:**
Appellees/Cross-Appellants assert that the lower court erred in refusing to grant their motion to strike inadmissible evidence submitted by Appellant/Cross-Appellee in opposition to their summary judgment motion.

**PLEASE IDENTIFY ANY OTHER LEGAL PROCEEDING THAT MAY HAVE A BEARING ON THIS CASE (INCLUDE PENDING DISTRICT COURT POST-JUDGMENT MOTIONS):** This matter and the briefing schedule should be consolidated with Appellants/Cross-Appellee's appeal presently pending before this Court at U.S. Appeals Docket No. 08-35217; Costanich v. Dep't of Soc. & Health Servs.; 138 Wn. App. 547, 156 P.3d 232 (2007); Plaintiff's Second Motion for Reconsideration of the District Court Order noted for April 11, 2008.

**DOES THIS APPEAL INVOLVE ANY OF THE FOLLOWING:**

☐ Possibility of settlement

☐ Likelihood that intervening precedent will control outcome of appeal

☐ Likelihood of a motion to expedite or to stay the appeal, or other procedural matters:

(Specify)_____

_____

☐ Any other information relevant to the inclusion of this case in the Mediation Program: _____

_____

☐ Possibility parties would stipulate to binding award by Appellate Commission in lieu of submission to judges

## LOWER COURT INFORMATION

| JURISDICTION | | DISTRICT COURT DISPOSITION | |
|---|---|---|---|
| FEDERAL | APPELLATE | TYPE OF JUDGMENT/ORDER APPEALED | RELIEF |
| ☒ Federal Question<br>☐ Diversity<br>☐ Other<br>(Specify): | ☒ Final Decision of District Court<br>☐ Interlocutory Decision Appealable As of Right<br>☐ Interlocutory Order Certified by District | ☐ Default Judgment<br>☐ Dismissal/jurisdiction<br>☐ Dismissal/merits<br>☐ Summary Judgment<br>☒ Judgment/court Decision<br>☐ Judgment/jury Verdict | ☐ Damages<br>Sought $_____<br>Awarded $_____<br>☐ Injunctions:<br>   ☐ Preliminary<br>   ☐ Premanent |

| | Judge (Specify):<br>☐Other<br>(Specify): | ☐Declaratory Judgment<br>☐Judgment as a Matter<br>of Law<br>☐Other<br>(Specify): | ☐Granted<br>☐Denied<br>☐Attorney Fees:<br>Sought $_____<br>Awarded $_____<br>☐Pending<br>☐Costs: $_____<br>☒Other (Specify):<br>Affirmance of<br>Dismissal |
|---|---|---|---|

## CERTIFICATION OF COUNSEL

**I CERTIFY THAT:**

1. Copies of Order/Judgment Appealed From Are Attached.
2. A Current Service List or Representation Statement With Telephone and Fax Numbers Are Attached (See 9th Cir. Rule 3-2).
3. A Copy of This Civil Appeals Docketing Statement Was Served in Compliance with FRAP 25.
4. I Understand That Failure to Comply With These Filing Requirements May Result in Sanctions, Including Dismissal of This Appeal.

_Allison Stanhope_                    _4-1-08_
Signature                                        Date

## COUNSEL WHO COMPLETED THIS FORM

NAME:  Allison Stanhope

FIRM:  Office of the Attorney General

ADDRESS: 7141 Cleanwater Drive SW, P.O. Box 40126, Olympia, WA 98504-0126

E-MAIL: allisonc@atg.wa.gov

TELEPHONE: (360) 586-6300

FAX: (360) 586-6655

**\*This Document Should Be Filed in The District Court With The Notice of Appeal\***
**\*\*If Filed Late, it Should Be Filed Directly With the U.S. Court of Appeals\*\***

## Current Service List

### Counsel for Defendants (Appellees/Cross-Appellants)

State of Washington
Department of Social and Health Services (DSHS)
Sandra Duron
Carol Schmidt
Beverly Payne
James Bulzomi
Robert Stutz
Ingrid Mckinney

Allison Stanhope, Assistant Attorney General
Washington State Attorney General's Office
Tort Division
7141 Cleanwater Drive SW
P O Box 40126
Olympia WA  98504-0126
Phone:  (360) 586-6300
Fax:  (360) 586-6655
Email:  allisonc@atg.wa.gov

### Counsel for Plaintiff (Appellant/Cross-Appellee)

Kathie Costanich

Carol Farr, Attorney At Law

The Law Offices of Leonard W Moen & Associates
947 Powell Ave SW Ste 105
Renton, WA  98057-2975
Phone:  (425) 227-4260
Fax:  (425) 227-5140
Email:  Carol@leonardmoen.com

1

2

3                    UNITED STATES DISTRICT COURT

4               WESTERN DISTRICT OF WASHINGTON
                           AT SEATTLE
5

6    KATHIE COSTANICH,
                                                Case No. C05-0090MJP
7                    Plaintiff,

8            v.

9                                               AMENDED ORDER
                                                GRANTING IN PART AND
     STATE OF WASHINGTON, DEPARTMENT OF         DENYING IN PART
10   SOCIAL AND HEALTH SERVICES (DSHS), et      DEFENDANTS' MOTION FOR
     al.,                                       SUMMARY JUDGMENT AND
11                                              DISMISSING PLAINTIFF'S
                     Defendants.                STATE CLAIMS WITHOUT
12                                              PREJUDICE

13           This matter comes before the Court on the parties' motions for summary judgment.

14   Defendants have filed a global motion, requesting summary judgment on all of Plaintiff's claims

15   against all defendants. (Dkt. No. 94.)  Plaintiff has filed a partial motion for summary judgment on

16   her federal 42 U.S.C. § 1983 claim against Defendant Sandra Duron. (Dkt. No. 92.)  Having

17   considered the motions, responses, replies, and supplemental briefs, all documents submitted in

18   support thereof, and the record herein, the Court DENIES Plaintiff's motion, GRANTS IN PART

19   and DENIES IN PART Defendants' motion, and DECLINES to exercise supplemental

20   jurisdiction over Plaintiff's state law claims.

21                                      **Background**

22           This case arises from a finding by the Washington Department of Social and Health

23   Services ("DSHS") that Plaintiff Kathie Costanich emotionally abused the children in her foster

24   home and from DSHS's revocation of Plaintiff's foster care license.  The Washington Court of

25   Appeals described the facts leading to the license revocation as follows:

26           Kathie Costanich and her husband Ken were foster parents devoted to caring for some
             of the neediest and most difficult foster children in the system.  Costanich's foster
27

ORDER — 1

home received accolades from the state, but she also regularly used profanity, sometimes swearing around her foster children. . . .

Costanich was a licensed foster parent in Washington for over 20 years. Her license allowed her to provide foster care for up to six children at a time, and she sometimes had waivers to care for additional children. All of these children had been victims of abuse or neglect and many had severe behavioral, developmental, and medical problems. She specialized in violent, sexually aggressive youth and medically fragile infants. Costanich was also the president of Foster Parents of Washington State and a trainer for DSHS. Before the abuse allegations, the most recent state evaluation described the Costanich foster home as a "unique and valuable resource ... unsurpassed by any foster home in the State."

During the summer of 2001, DSHS investigated an allegation that Costanich emotionally and physically abused her foster children, based on what K., one of her foster children, told his therapist. At the time of the investigation, Costanich had six foster children living in her home: F. (17), K. (15), J. (12), P. (10), and two sisters, E. (8) and B. (4). [1] Sandra Duron investigated the allegations for CPS [(Child Protective Services)] and reported there was inconclusive evidence of physical abuse, but the emotional abuse allegations were "founded." This finding was based primarily on two specific incidents. K. claimed that Costanich said "I'll kill you bastard" to F., when she had to pull him off one of her female aides. The aide and F. had gotten into an altercation because F. was spying on her while she was sunbathing. K. also said Costanich told P., the only African-American child in the house, to move his "black ass." Additionally, he alleged Costanich had a general habit of swearing at the children and had called E. a "cunt." Later investigation resulted in allegations that Costanich also called E. a "bitch." On March 14, 2002, DSHS informed Costanich that it upheld the finding of emotional abuse after an internal review. On August 16, 2002, DSHS revoked Costanich's foster care license based primarily on this finding of abuse.

Costanich v. Dep't of Social and Health Servs., 138 Wn. App. 547, 551-53 (2007).

Plaintiff's allegations in this case focus on Sandra Duron's investigation of the allegations of child abuse. Ms. Duron interviewed each of the foster children in Plaintiff's home, all but one of whom stated that Ms. Costanich used profanity regularly. (Id. ¶¶ 3-4 & Exs. B & D.) Some of the children alleged that Ms. Costanich directed the profanity at the children (see id.) and several reported that Ms. Costanich used physical violence towards some of the children and put urine-soaked sheets in P.'s face. (Id., Ex. D.) Ms. Duron also contacted the in-home assistants, some of the children's therapists, family friends, Ms. Costanich's sister, and Ms. Costanich herself. (See id.) Although Ms. Duron reported that she had interviewed many of the children's therapists and

---

[1]    The Costanichs' were also the legal guardians of E. and B. and had raised them since infancy.

ORDER — 2

1   social workers, she admitted in cross-examination that she had not actually interviewed, but had

2   only "contacted" or "spoken to" eighteen of the 38 people she identified as having interviewed.

3   (See Plf's Mot., Exs. 14-18.) Ms. Duron also admitted on cross-examination that although she

4   reported K.'s statements about violence and profanity in the home, K. actually "wouldn't say

5   much" during his interview, and she admitted that she did not interview K.'s therapist, Mr. Crabb,

6   to whom K. had made his initial complaint. (Id., Ex. 16.) Ms. Duron reported that almost all of

7   the witnesses (including Ms. Costanich herself) confirmed that Ms. Costanich uses profanity

8   regularly but differed on whether that profanity was ever directed at the children or whether Ms.

9   Costanich ever used physical violence with the children. (Duron Decl., Ex. D.)

10          In the fall of 2001, several of the children's medical providers or therapists wrote to

11  DSHS on behalf of Ms. Costanich, stating that they believed that Ms. Costanich was providing a

12  positive home for the children in which the children were thriving. (Plf's Resp., Ex. 1.) Around

13  that same time, several witnesses interviewed by Ms. Duron wrote DSHS complaining that Ms.

14  Duron had misrepresented their statements to her, had badgered them into making an abuse

15  allegation, and/or had associated statements with them that they had never made. (Plf's Resp., Ex.

16  2.) Ms. Duron states in her declaration that these letters did not influence her decision because

17  she "knew these witnesses were mistaken." (Duron Decl. ¶ 11.)

18          DSHS held several "staffings" regarding the abuse allegations against Ms. Costanich.

19  (Duron Decl. ¶¶ 5-8.) Ms. Duron also hired an outside consultant, clinical psychologist Beverly

20  Cartwright, to give input regarding the allegations. Based on records provided by DSHS and

21  input provided by Ms. Duron and her supervisor, Dr. Cartwright opined that "[p]ejorative

22  statements can erode a child's confidence, a child's will to succeed and capacity to change . . . .

23  This behavior can also maintain attachment difficulties, undermine relationships with authority

24  figures, and exacerbate poor self-management styles that include not [only] withdrawal and

25  suppression of emotions, but also acting out." (Id., Ex. E.) Dr. Cartwright did not independently

26  meet with any of the children.

27

ORDER — 3

1    In 2001, the definition of child abuse included cruel or inhumane acts, "regardless of

2    observable injury," and actions that injured or created a risk to a child's mental health or

3    development. Former WAC 388-15-130(3)(d), (g) (2001).  Moreover, in 2000, the Washington

4    Court of Appeals held that the use of profanity towards children constituted "humiliating

5    discipline" in violation of Former WAC 388-73-046(2). Morgan v. DSHS, 99 Wn. App. 148, 155

6    (2000).  Based on her review of the records, her interviews, consultation with her direct

7    supervisor Beverly Payne and Dr. Cartwright, several case staffings, and the governing law at the

8    time, Ms. Duron made a finding of "inconclusive" as to physical abuse and "founded" as to

9    emotional abuse. (Duron Decl. ¶ 10 & Ex. D.)  Ms. Costanich was informed of the finding by a

10   letter sent by Beverly Payne in December 2001. (Smith Decl., Ex. A.)  Kyle Smith from DSHS

11   reviewed the finding and concluded, after reviewing the record and conducting a few additional

12   interviews, that it was supported by the evidence. (Smith Decl. ¶¶ 4-7.)

13   On March 28, 2002, the State filed a motion to terminate the Costanichs' guardianship of

14   E. and B.[2]  The State offered in support a March 6 declaration from Ms. Duron in which she

15   describes her investigation and the statements of the witnesses, and concludes that "Ms. Costanich

16   uses profanity, name-calling and derogatory racial terms as means to discipline and intimidate the

17   children." (Duron Decl., Ex. F.)  Before the King County Juvenille Court ruled on the motion to

18   terminate guardianship, the Kalispell Tribe (of which E. and B. are members) intervened and

19   assumed jurisdiction of the case.  The Tribe chose to have the girls spend time with extended

20   relatives during the summer of 2002 and then returned the girls to the Costanich home in August

21

22   [2]    The State filed the motion to terminate with the support of E. and B.'s new social
worker, Jackie Timenta-Wilson. Ms. Timenta-Wilson replaced the girls' previous social workers, E.
23   Nelson and S. Hunter. Ms. Nelson testified that she was transferred off the girls' case because her
supervisor felt that she "was not being active enough in taking steps to remove the children" from the
24   Costanich household. (Plf's Resp., Ex. 9.) Ms. Hunter similarly testified that the case was "suddenly"
gone from her caseload and that she was told not to have any contact with the girls' next social
25   worker. (Id.) Both Ms. Nelson and Ms. Hunter had recommended that the girls should remain with
Ms. Costanich. Ms. Timenta-Wilson testified that she was instructed not to talk about the girls' case
26   with Ms. Hunter. (Id., Ex. 10.)

27

ORDER — 4

1   of 2002. (Timentwa-Wilson Decl. ¶¶ 6-8.)

2       In August 2002, Ingrid McKinney, licensor of the Costanich foster home, revoked the

3   foster care license due to the finding of emotional abuse and violations of the minimum licensing

4   requirements for foster homes. (McKinney Decl. ¶ 5, Ex. B.)  Under the governing regulations,

5   DSHS must revoke a foster care license if the provider was found to have committed child abuse

6   or neglect unless the department determines that the foster parent does not pose a risk to the

7   child's safety, well-being, and long-term stability. WAC 388-148-0095(2)(b).  Ms. McKinney's

8   decision was reviewed and approved of by her supervisor at the time, James Bulzomi. (Id. ¶ 5.)

9       Ms. Costanich appealed both the finding of abuse and the revocation of her license in an

10  administrative hearing.  After a nineteen day hearing that included testimony from forty-nine

11  witnesses, on January 16, 2004, the ALJ overturned DSHS' decision, concluding that the finding

12  of emotional abuse was unfounded. (Lux Decl., Ex. A.)  DSHS appealed this decision to the

13  DSHS Board of Appeals.  On August 11, 2004, the review judge reversed the ALJ's initial

14  decision. (Id., Ex. B.) He found there was substantial evidence that Ms. Costanich had threatened

15  to kill F., told P. to move his "black ass," called E. profane names, and swore at the children in

16  her home. (Id. at 79-80.)  The review judge concluded this constituted emotional abuse and

17  justified revoking her license. (Id. at 80.)  Costanich sought judicial review, and on October 13,

18  2005, the King County Superior Court reversed the review judge's final administrative decision

19  and awarded attorney's fees. (Id., Ex. C.)  In January 2007, the court of appeals affirmed the

20  decision of the superior court, upholding the ALJ's conclusion that Ms. Costanich's use of

21  profanity did not pose a "substantial risk" to the mental health or development of the children and

22  did not constitute "humiliating discipline" under the applicable regulations. Id. at 561-62.  On a

23  motion for reconsideration, the court of appeals awarded attorney's fees because "although DSHS

24  was justified initially in its concerns about Costanich's use of profanity, the evidence before the

25  ALJ shows that DSHS was not substantially justified in revoking her license once it became aware

26  of the problems of Duron's investigation." Costanich, 138 Wn. App. at 564.

27

ORDER — 5

Case 2:05-cv-00090-MJP    Document 130    Filed 02/19/2008    Page 6 of 21

1    　　　The court of appeals described the findings of the ALJ and DSHS Review Board

2    regarding the allegations against Ms. Costanich and regarding Ms. Duron's investigation as

3    follows:

4    　　　The ALJ found that, although Costanich used profanity around the children, her
　　　swearing was "never directed at the children." He also found that she told P. to
5    　　　move his "black ass." There was substantial evidence for these findings. He based
　　　them solely on the testimony of the adult witnesses at the hearing, including the
6    　　　children's therapists and the aides who worked in the Costanich home. The ALJ
　　　explicitly chose not to rely on [Sandra Duron's] hearsay statements about what the
7    　　　children told her. In contrast, the [DSHS] review judge based his decision to
　　　uphold the revocation of Costanich's license on four factual findings: (1)
8    　　　Costanich's telling F., "I'll kill you bastard," (2) telling P. to move his "black ass,"
　　　(3) calling E. a "bitch" and a "cunt," and (4) swearing at the children. The review
9    　　　judge added findings one and three, and finding four is in direct conflict with the
　　　ALJ's characterization of Costanich's swearing. . . .
10
　　　The review judge's three contested findings are all based primarily on the CPS
11    　　　investigators' hearsay statements, which the ALJ found not credible.

12    　　　The review judge relied heavily on the investigator's claim that she took
　　　near-verbatim notes from her interviews with E., F., and K., none of whom
13    　　　testified before the ALJ. The review judge stated: "[T]he undersigned presumes
　　　that the statements of the children reported in Ms. Duron's near-verbatim notes are
14    　　　the words of the children rather than the interpretation or summary of Ms. Duron."
　　　But Duron herself admitted that she did not always take near-verbatim notes,
15    　　　stating on cross-examination that K. "wouldn't say much, so I just kind of
　　　summarized what he was saying." Duron conducted all but one of her interviews
16    　　　with the children without a third person present and did not record any of the
　　　interviews. The only documentary evidence of the interviews in the administrative
17    　　　record is her service episode reports (SERs), which represent the data she entered
　　　into the computer from her handwritten notes. The original near-verbatim notes
18    　　　were not produced at the hearing. And the SERs show that she put words in the
　　　mouth of at least one of the children. When interviewing J., Duron asked, "When
19    　　　you say[], 'go to your fucken [sic] room' whom does she [Costanich] say that
　　　to[]?" But J. never claimed Costanich said that. Additionally, even the review
20    　　　judge acknowledged that there were a number of problems with Duron's reporting
　　　of her conversations with adults, including that she made up the statement of one
21    　　　witness and misquoted a number of others. The review judge acknowledged that
　　　Duron's reports of her interviews with adults were incredible but assumed that her
22    　　　interviews with the children were accurate, "near verbatim" recordings simply
　　　because she said so. . . .
23
　　　[T]he ALJ explicitly based his decision only on the testimony of the witnesses at
24    　　　the hearing, not on Duron's reports and hearsay statements. He found it was
　　　impossible to determine whether she was "taking the answers out of context or to
25    　　　know whether or not the answering party fully understood the nature of the
　　　question being asked." He also found K.'s statements as recorded by his therapist
26    　　　lacking in credibility. The review judge not only ignored the ALJ's credibility
　　　determinations, he also chose to base his decision on the very evidence the ALJ

27

ORDER — 6

1    rejected as lacking credibility: the testimony of [Sandra Duron] and K.'s hearsay
     statements to his therapist. The review judge substituted his own view of the
2    evidence for the ALJ's findings, which are supported by substantial evidence.

3    <u>Costanich</u>, 138 Wn. App. at 557-59.

4        On December 20, 2004, while her appeal of the review judge's decision to the superior

5    court was pending, Ms. Costanich filed a tort suit in King County Superior Court against the

6    State of Washington, Department of Social and Health Services, Sandra and John Doe Duron,

7    Carol and John Doe Schmidt, Beverly and John Doe Payne, James and Jane Doe Bulzomi, Robert

8    and Jane Doe Stutz, and Ingrid and John Doe McKinney. (Dkt. No. 1.)  Plaintiff asserts violations

9    of her civil rights under 42 U.S.C. §1983 and asserts claims of intentional infliction of emotional

10   distress (outrage), negligent investigation, malicious prosecution, and abuse of process.[3]  (<u>See</u>

11   Dkt. No. 84, Second Am. Compl.)  Plaintiff claims that DSHS and its employees conducted a

12   malicious and intentionally defective investigation into accusations that she emotionally abused the

13   children in her care.  She alleges that DSHS's actions deprived her of her livelihood and her

14   children, and inflicted serious emotional and financial trauma upon her and her family. (<u>Id.</u>)

15       Defendants timely removed the action to federal court. (Dkt. No. 1.)  This Court

16   postponed issuing a scheduling order in this case while the superior court case was pending, and

17   then ordered that this matter be stayed while the State appealed its loss in the superior court.

18   (Dkt. No. 38.)  After the court of appeals issued its decision, the stay was lifted and a scheduling

19   order issued on March 6, 2007. (Dkt. No. 53.)

20       Plaintiff now moves for partial summary judgment on her federal claim against Defendant

21   Duron.  Plaintiff argues that Ms. Duron fabricated evidence against her, twisted the children's

22   words, and filed a false report and false statements against Ms. Constanich all in violation of Ms.

23   Costanich's right to due process.  Defendants have also moved for summary judgment on all of

24   Plaintiff's claims against all defendants.  Defendants argue that all of the defendants are either

25

_____

26        [3]      Plaintiff has withdrawn her negligent infliction of emotional distress claim. (Plf's Resp.
     at 9 n.3.)
27

ORDER — 7

1   immune from suit or are not "persons" subject to § 1983 liability. Defendants also argue that the

2   record does not support any of Plaintiff's claims.

3          On January 24, 2008, the Court issued an order on these cross-motions for summary

4   judgment. (Dkt. No. 125.) That same day, the Ninth Circuit issued an opinion that overruled a

5   prior decision relied upon by this Court in its order. See Beltran v. Santa Clara County, 2008 U.S.

6   App. LEXIS 1331 (9th Cir. Jan. 24, 2008) (overruling Doe v. Lebbos, 348 F.3d 820 (9th Cir.

7   2003)). The Court withdrew its order sua sponte and called for supplemental briefing in light of

8   Beltran. (Dkt. No. 126.) Having considered that supplemental briefing, the Court now issues this

9   amended order.[4]

10                                   **Discussion**

11  **I.      Motions to Strike**

12         As a preliminary matter, Defendants have moved to strike several references in Plaintiff's

13  response to Defendants' motion for summary judgment.

14         **A.      Settlement Offer**

15         Defendants move to strike all references to an offer that Defendants' allegedly made to

16  Plaintiff. Ms. Costanich has presented testimony from three witnesses who attended a November

17  14, 2001, meeting at which DSHS apparently offered to refrain from pursuing guardianship

18  termination proceedings against Ms. Costanich if she did not appeal the agency's emotional abuse

19  finding. (Plf's Resp., Ex. 14.) Two of the witnesses state in their testimony that such an offer was

20  made and one witness states that the agency was "exploring" that kind of an offer with Ms.

21  Costanich. (Id.)

22         Defendants move to strike references to this offer under Federal Evidence Rule 408(a)(1)

23  & (2). Evidence Rule 408 states that evidence of offers to compromise are not admissible "when

24  offered to prove liability for, invalidity of, or amount of a claim . . . ." Fed. R. Evid. 408. Here,

25  _____

26         [4]      The only substantive changes between the Court's previous order and this amended

27  order are in its absolute immunity analysis in section IV.B.

ORDER — 8

1   Plaintiff does not rely on the offer to prove liability for or invalidity of a claim, but to show that

2   DSHS inappropriately pressured her to accept its abuse finding.  The motion to strike evidence of

3   the offer is DENIED.

4       **B.     Testimony of non-party witnesses**

5       Defendants move to strike the testimony of several non-parties who testified at the

6   administrative hearing under Federal Evidence Rule 804(b) because Plaintiff has not shown that

7   these witnesses are unavailable to testify.  Federal Evidence Rule 804(b) states that the testimony

8   of a witness from a prior hearing is exempted from the hearsay rule only if the declarant is

9   unavailable as a witness.  Although these declarations would not be admissible at trial without

10  demonstration of the declarants' unavailability, the declarations are sufficient at the summary

11  judgment stage.  See Fraser v. Goodale, 342 F.3d 1032, 1036 (9th Cir. 2003) ("At the summary

12  judgment stage, we do not focus on the admissibility of the evidence's form.  We instead focus on

13  the admissibility of its contents.").  The motion to strike this testimony is DENIED.

14      **C.     Letters**

15      Defendants ask the Court to strike many of the letters sent to DSHS by doctors, aide

16  workers, and others — letters that detailed that the Costanichs were providing a good home and

17  alleged that Ms. Duron "twisted" the witnesses' words in her reporting of their interviews. (See

18  Plf's Resp., Exs. 1 & 2.)  Defendants argue that the letters should be excluded both because they

19  were not signed under penalty of perjury and because they are irrelevant in that they do not reveal

20  when DSHS received the letters or what bearing they had on the DSHS investigation.

21      Letters that are not sworn under penalty of perjury cannot be used by the non-movant to

22  create an issue of material fact on summary judgment.  See Fed. R. Civ. P. 56(e); 28 U.S.C. §

23  1746. Ms. Costanich offers several unsworn letters from the following individuals: Dr. H. Bartlett

24  Vincent,[5] Shawn S. Brown, Richard Crabb, Francis Mark Froes, Donna Ewy, Victoria Kay

25

_____

26      [5]     Two of Dr. Vincent's letters — those sent on December 7, 2001 — are not sworn

27  under penalty of perjury.  Another letter sent by Dr. Vincent on March 26, 2002, is sworn under

ORDER — 9

1   McLaughlin, Sara L. McLaughlin, and F. (Plf's Resp., Ex. 1.) To the extent that they are used to

2   prove the truth of the matter asserted — that Ms. Costanich provides a non-abusive household to

3   the foster children in her care and that Ms. Duron misrepresented witness statements and put

4   words into witnesses mouths — these unsworn statements will not be considered. But to the

5   extent that they are only used to show what evidence DSHS had before it, unsworn letters, as

6   long as they are dated, are sufficient and acceptable on summary judgment. All of the unsworn

7   letters are dated except the letters from Victoria McLaughlin, Sarah McLaughlin, and F. (Id.)

8   The undated unsworn letters will not be considered. Therefore the motion to strike is GRANTED

9   IN PART and DENIED IN PART.

10  **II.    Summary Judgment Standard**

11          Summary judgment will be granted when there is no genuine issue as to any material fact

12  and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The party

13  seeking summary judgment bears the initial burden of informing the court of the basis for its

14  motion, and of identifying those portions of the pleadings and discovery responses that

15  demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S.

16  317, 323 (1986). Where the moving party will have the burden of proof at trial, it must

17  affirmatively demonstrate that no reasonable trier of fact could find other than for the moving

18  party. Calderone v. United States, 799 F.2d 254, 259 (6th Cir. 1986). On an issue where the

19  nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by

20  pointing out to the district court that there is an absence of evidence to support the non-moving

21  party's case. Catrett, 477 U.S. at 325. If the moving party meets its initial burden, the opposing

22  party must then set forth specific facts showing that there is some genuine issue for trial in order

23  to defeat the motion. Anderson v. Liberty Lobby, 477 U.S. 242, 250 (1986).

24  **III.    Collateral Estoppel**

25          Plaintiff argues that Defendants are collaterally estopped "from denying that Ms.

26

27  penalty of perjury. (See Plf's Resp., Ex. 1.)

ORDER — 10

1   Costanich did not swear at children or otherwise abuse or harm any child, that DSHS had no

2   credible evidence that she [had] done so, that Duron's reports were not reliable or credible, that

3   Duron made up and misquoted witness statements, that DSHS was not justified in revoking Ms.

4   Costanich's foster care license because they knew of the trouble with Duron's investigation."[6]

5   (Plf's Resp. at 11-12.)  Federal courts are required to give the same preclusive effect to state

6   court judgments as would be given that judgment under the law of the state in which the judgment

7   was rendered. <u>Migra v. Warren City Sch. Bd. of Educ.</u>, 465 U.S. 75, 81 (1984).  Under

8   Washington law, a party asserting collateral estoppel must show that (1) the issue in the prior

9   adjudication is identical to the one presented in the later action, (2) the prior adjudication ended

10  with a final judgment on the merits, (3) the party against whom estoppel is asserted was a party or

11  in privity with a party to the first action, and (4) application of the doctrine will not work an

12  injustice on the party against whom it is pleaded. <u>Lutheran Day Care v. Snohomish County</u>, 119

13  Wn.2d 91, 115 (1992).  Washington courts will apply preclusive effect to findings of an

14  administrative body.  In making the decision whether to do so, courts consider "(1) whether the

15  agency acting within its competence made a factual decision; (2) agency and court procedural

16  differences; and (3) policy considerations." <u>Reninger v. Dep't of Corrs.</u>, 134 Wn.2d 437, 450

17  (1998).

18          The Court will not apply collateral estoppel to the findings or decisions of the agency or

19  state courts because the issues considered by the agency and the state courts are not identical to

20  the issues presented here.  The ALJ considered whether the referral alleging abuse or neglect

21  should be founded, whether acts committed by Ms. Costanich were cruel or inhumane or did

22  result in injury or a substantial risk of injury to the physical or mental health or development of a

23  child, and whether DSHS's decision to revoke the foster care license should be upheld. (Lux

24  ─────────────────

25          [6]      Plaintiff also argues that the ALJ's findings are the facts here because a "presumption
    of correctness applies to the factual determinations of both trial and appellate state courts." (Plf's
26  Resp. at 6.)  A "presumption of correctness" applies in <u>habeas</u> cases, <u>see</u> <u>e.g.</u>, <u>Steele v. Young</u>, 11
    F.3d 1518, 1520 n.2 (10th Cir. 1993), but is not a consideration in the context presented here.
27

ORDER — 11

1    Decl., Ex. A, at 2.)  The ALJ did not consider whether Ms. Duron's investigation and/or the acts

2    of the other DSHS employees were tortious or violated Plaintiff's constitutional rights.  The main

3    factual issues here — whether Ms. Duron fabricated evidence, misrepresented witness statements,

4    and/or badgered witnesses and whether the other DSHS employees participated in that faulty

5    investigation — were not issues at the agency or state court levels.  Therefore, the findings of fact

6    and conclusions of law made by the ALJ, DSHS Review Board, and state courts do not control

7    here.

8    **IV.    42 U.S.C. § 1983 Claim**

9        Plaintiff asserts claims against all defendants under 42 U.S.C. § 1983 for violations of her

10   due process rights.  Section 1983 creates a private right of action against individuals who, acting

11   under color of state law, violate federal constitutional or statutory rights.  Plaintiff alleges a

12   falsification-of-evidence claim.  To establish this due process claim, Plaintiff must show a

13   government deprivation of life, liberty, or property. Nunez v. City of Los Angeles, 147 F.3d 867,

14   871 (9th Cir. 1998).  Here, Defendants do not dispute that Plaintiff has property and liberty

15   interests in her foster care license or that she has a liberty interest in the care of E. and B.

16       Defendants argue that Plaintiff's § 1983 claims must fail because DSHS is not a "person"

17   subject to 1983 liability and because the individually named defendants are immune from suit.

18   **A.    "Persons" under 42 U.S.C. § 1983**

19       Plaintiff has alleged a federal claim against the Washington State Department of Social and

20   Health Services.  Neither the state nor its agency "arms" are "persons" subject to § 1983 liability.

21   See Will v. Mich. Dep't of State Police, 491 U.S. 58, 70 (1989).  Although Plaintiff correctly

22   cites Lapides v. Board of Regents for the proposition that the State waived its Eleventh

23   Amendment immunity when it removed this case to federal court, Lapides itself makes clear that

24   such waiver does not make a state or its agencies "persons" under § 1983. See 535 U.S. 613, 617

25

26

27

ORDER — 12

1  (2002). The Court dismisses Plaintiff's claims against DSHS.[7]

2  **B.     Absolute Immunity**

3       Defendants argue that Ms. Duron is absolutely immune from § 1983 liability for filing a

4  declaration in support of terminating the Costanichs' guardianship of E. and B. and that Ms.

5  Duron, Ms. McKinney, and Mr. Bulzomi are absolutely immune from liability arising from the

6  revocation of the Costanichs' foster care license.[8] Federal law controls the question of immunity

7  in cases where a plaintiff alleges a 42 U.S.C. § 1983 claim. Martinez v. California, 444 U.S. 277,

8  284 & n.8 (1980). Absolute immunity shields individuals from § 1983 liability if they perform a

9  function that enjoyed absolute immunity at common law. Miller v. Gammie, 335 F.3d 889, 897

10  (9th Cir. 2003). It is only the specific function performed and not the role or title of the official

11  that matters. Id. Officials acting in a prosecutorial or judicial role, or performing functions closely

12  associated with the judicial process, are entitled to absolute immunity. Id. at 896-98. "The official

13  seeking absolute immunity bears the burden of showing that such immunity is justified for the

14  function in question." Buckley v. Fitzsimmons, 509 U.S. 259, 269 (1993).

15       In the context of child advocacy, the Ninth Circuit has held that although the scope of

16  absolute immunity for social workers is extremely narrow, see Miller, 335 F.3d at 898, "social

17  workers have absolute immunity when they make 'discretionary decisions to initiate court

18  dependency proceedings to take custody away from parents.'" Beltran v. Santa Clara County,

19  2008 U.S. App. LEXIS 1331, at *3 (9th Cir. Jan. 24, 2008), as amended by 2008 U.S. App.

20

21  _____

22  [7]       In addition to monetary damages, Plaintiff has also asked for injunctive relief from all
   defendants: Plaintiff asks the Court to enjoin DSHS "from using their foster care license revocation
23  process to remove children from the home without considering the children's own interests." (Compl.
   at 16.) Defendants argue that this injunctive relief claim should also be dismissed and Plaintiff does
24  not suggest in her responsive briefing that this claim should survive. Accordingly, any claim for
   injunctive relief is dismissed as well. See Local CR 7(b)(2).

25

26  [8]       Defendants originally argued that Ms. Duron also deserved immunity for conducting
   the child abuse investigation, but withdrew that argument in light of Beltran v. Santa Clara County,
27  2008 U.S. App. LEXIS 1331 (9th Cir. Jan. 24, 2008).

ORDER — 13

1   LEXIS 3095 (9th Cir. Feb. 13, 2008) (quoting Miller, 335 F.3d at 898); Meyers v. Contra Costa

2   County Dep't of Soc. Servs., 812 F.2d 1154, 1157 (9th Cir. 1987).  That immunity applies even

3   where a complaint alleges caseworker misconduct or intentional wrongdoing. See Cunningham v.

4   Wenatchee, 214 F. Supp. 2d 1103, 1111 (E.D. Wash. 2002).   In Meyers, the court held that the

5   initiation and pursuit of child-dependency proceedings were prosecutorial in nature and warranted

6   absolute immunity. Id.  As Meyers explained, "[a]lthough child services workers do not initiate

7   criminal proceedings, their responsibility for bringing dependency proceedings, and their

8   responsibility to exercise independent judgment in determining when to bring such proceedings, is

9   not very different from the responsibility of a criminal prosecutor. The social worker must make a

10  quick decision based on perhaps incomplete information as to whether to commence

11  investigations and initiate proceedings against parents who may have abused their children. The

12  social worker's independence, like that of a prosecutor, would be compromised were the social

13  worker constantly in fear that a mistake could result in a time-consuming and financially

14  devastating civil suit." Id. at 1157.  In Beltran, the Ninth Circuit made clear that absolute

15  immunity for social workers does not extend beyond that quasi-prosecutorial function: "[social

16  workers] are not entitled to absolute immunity from claims that they fabricated evidence during an

17  investigation or made false statements in a dependency petition that they signed under penalty of

18  perjury, because such actions aren't similar to discretionary decisions about whether to

19  prosecute." Beltran, 2008 U.S. App. LEXIS 1331, at *3.

20      Defendant Duron concedes that, under Beltran, she is not entitled to absolute immunity

21  for her actions investigating the child abuse and neglect referral.  Because a social worker is not

22  absolutely immune from claims that she conducted a false or fraudulent child abuse investigation,

23  Ms. Duron does not deserve absolute immunity for her investigatory conduct.

24      Defendant Duron argues that she still deserves absolute immunity for her filing of a

25  declaration in support of the State's guardianship termination proceedings.  Witnesses in

26  adversarial judicial proceedings generally receive absolute immunity for their testimony. Briscoe v.

27

ORDER — 14

1   LaHue, 460 U.S. 325, 345-46 (1983); Burns v. King County, 883 F.2d 819, 822 (9th Cir. 1989).

2   In Briscoe, the Supreme Court held that witnesses, including government officials, are absolutely

3   immune from § 1983 liability based on their trial testimony. 460 U.S. at 326.  In Burns, the Ninth

4   Circuit extended absolute immunity to a case worker for an allegedly false affidavit she submitted

5   in adversarial post-conviction bond proceedings. 883 F.2d at 823. The court reasoned that the

6   existing checks in our system — judicial supervision, the possibility of prosecution for perjury,

7   and the opportunity to present opposing evidence — all minimized the risk that false testimony

8   would go undetected. Id.  But in Beltran, the Ninth Circuit held that a social worker was not

9   entitled to absolute immunity from claims that she made false statements in a dependency petition

10  affidavit signed under penalty of perjury. 2008 U.S. App. LEXIS 1331, at *3.[9]  Under Beltran,

11  Ms. Duron does not deserve absolute immunity from liability arising from allegedly false

12  statements in her declaration filed in support of guardianship termination.

13        Defendants also argue that the revocation of the foster care license is quasi-prosecutorial

14  in nature and therefore covered by absolute immunity.  The Supreme Court has held that absolute

15  immunity shields federal officials who perform adjudicatory functions within a federal agency.

16  Butz v. Economou, 438 U.S. 478, 512-13 (1978).  Defendants cite to Washington and California

17  state opinions extending absolute immunity from § 1983 claims to state agency officials who have

18  revoked licenses.  In Hannum v. Friedt, 88 Wn. App. 881, 888 (1997), the Washington Court of

19  Appeals relied on Butz in holding that a director and administrator at the state department of

20  licensing enjoyed absolute immunity for their decision to charge the licensee with violating the

21  licensing statute and for their suspension of the license.  In Gensburg v. Miller, the California

22  Court of Appeals held that the revocation of a foster care license deserved absolute immunity. 31

23  Cal. App. 4th 512, 521 (1995) ("In implementing disciplinary action to protect the welfare of

24  ───────────────────────

25        [9]    The Beltran court did not explain the difference between the social worker in Beltran
    who did not receive absolute immunity for filing a "dependency petition affidavit" describing the
26  findings of a child abuse investigation and the Burns case worker who did deserve absolute immunity
    for filing an affidavit relating allegations of domestic abuse.
27

ORDER — 15

1   foster children under the [plaintiffs'] care, the State DSS defendants were acting in a prosecutorial

2   role. . . . State officials making a decision whether to invoke suspension remedies pursuant to

3   statute are acting in a quasi-judicial capacity, and are entitled to judicial immunity from section

4   1983 claims."). Although the holdings in Hannum and Gensburg are not binding on this Court,

5   they are persuasive. Ms. Duron and Ms. McKinney both participated in the revocation of the

6   foster care license, an act both prosecutorial and judicial in nature, and deserve absolute immunity

7   for that act. Defendant Bulzomi reviewed the revocation decision and signed the letter informing

8   Ms. Costanich that her license was revoked. Mr. Bulzomi deserves absolute immunity for those

9   acts.

10       In sum, Defendant Duron does not deserve absolute immunity from § 1983 liability for her

11   investigation of the child abuse and neglect referral or her filing of a declaration in support of the

12   State's guardianship termination proceedings. She does deserve absolute immunity for facilitating

13   the foster care license revocation. Defendants McKinney and Bulzomi also deserve absolute

14   immunity from a federal § 1983 claim arising from the revocation of Plaintiff's foster care license.

15   **C.       Qualified Immunity**

16       Although absolute immunity does not shield all of the defendants from liability, all of the

17   individual defendants are entitled to qualified immunity because it would not have been clear to

18   reasonable officials in their positions that their conduct was unlawful. See Harlow v. Fitzgerald,

19   457 U.S. 800, 818 (1982) (holding that qualified immunity shields § 1983 defendants "from

20   liability for civil damages insofar as their conduct does not violate clearly established statutory or

21   constitutional rights of which a reasonable person would have known"). A two-step process

22   controls the qualified immunity analysis. First, the court must determine whether "[t]aken in the

23   light most favorable to the party asserting injury, . . . the facts alleged show the officer's conduct

24   violated a constitutional right." Saucier v. Katz, 533 U.S. 194, 201 (2001). If the facts as alleged

25   do show a violation of a constitutional right, "then the court must proceed to determine whether

26   the right was 'clearly established,' i.e., whether the contours of the right were already delineated

27

ORDER — 16

1   with sufficient clarity to make a reasonable officer in the defendant's circumstances aware that

2   what he was doing violated the right." <u>Devereaux v. Abbey</u>, 263 F.3d 1070, 1074 (9th Cir. 2001)

3   (citing <u>Saucier</u>, 533 U.S. at 201).

4        The moving defendant bears the burden of proving that she is entitled to qualified

5   immunity. <u>Moreno v. Baca</u>, 431 F.3d 633, 638 (9th Cir. 2005). Nevertheless, "[w]here the

6   defendant raises the affirmative defense of qualified immunity, the initial burden is upon the

7   plaintiff to show that the rights were clearly established, after which the defendant bears the

8   burden of proving that his conduct was reasonable." <u>Shoshone-Bannock Tribes v. Fish & Game</u>

9   <u>Comm'n</u>, 42 F.3d 1278, 1285 (9th Cir. 1994).

10       Plaintiff has failed to identify a clearly established right that Defendants violated. In her

11  complaint, Plaintiff alleges that Defendants' actions violated her "civil rights" and her "right to

12  due process" and "have wrongfully deprived her of her liberty and her property." (Compl. at 10.)

13  These rights are too nebulous to be "clearly established" for the purposes of qualified immunity

14  analysis. In her briefing, the only clearly established federal right that Plaintiff identifies is the

15  constitutional right "not to be subjected to criminal charges on the basis of false evidence that was

16  deliberately fabricated by the government."[10] See <u>Devereaux</u>, 263 F.3d at 1074-75. But Plaintiff

17  has not been subjected to criminal charges — instead, DSHS made a finding of emotional abuse,

18  initiated guardianship termination proceedings, and revoked her foster care license. <u>Devereaux</u> is

19  distinguishable.

20       Even if the rule articulated in <u>Devereaux</u> were applicable here, Plaintiff has not provided

21  evidence showing that Defendants deliberately made false statements and fabricated evidence to

22  make a false finding of abuse. To make out a deliberate-fabrication-of-evidence claim, Plaintiff

---

[10]    Plaintiff has also cited to several Washington cases holding that state employees who act in bad faith do not deserve qualified immunity. See <u>Tyner v. State Dep't of Social & Health Servs.</u>, 141 Wn.2d 68 (2000); <u>Lesley v. Dep't of Social & Health Servs.</u>, 83 Wn. App. 263 (1996). But those cases discuss qualified immunity under state law from state law claims. Whether qualified immunity is available under state law is irrelevant to a § 1983 qualified immunity analysis. To the extent that those cases also discuss § 1983 qualified immunity, they are not binding on this Court.

ORDER — 17

1  must point to evidence that shows that Defendants "continued their investigation of [Plaintiff]

2  despite the fact that they knew or should have known that [she] was innocent" or "used

3  investigative techniques that were so coercive and abusive that they knew or should have known

4  that those techniques would yield false information." <u>Devereaux</u>, 263 F.3d at 1076.  Plaintiff has

5  pointed to discrepancies in Ms. Duron's investigation and the reporting of her investigation —

6  that Ms. Duron disregarded the statements of some of the adult witnesses (<u>see</u> Duron Decl. ¶ 11);

7  that she reported that she "interviewed" certain individuals, including therapists and doctors, even

8  though she had only spoken to or contacted those witnesses (<u>see</u> Plf's Mot., Exs. 14-18); and that

9  she twisted witnesses' words and/or attributed statements to some of the witnesses that they did

10  not make (<u>see</u> Plf's Resp., Ex. 2).  She has also pointed to errors in records and testimony made

11  by the other defendants. (<u>See</u> Plf's Resp. at 4.)  But a careless or inaccurate investigation that

12  does not ensure an error-free result does not rise to the level of a constitutional violation.

13  <u>Devereaux</u>, 263 F.3d at 1076-77; <u>see also</u> <u>Gausvik v. Perez</u>, 345 F.3d 813, 817 (9th Cir. 2003).

14  Moreover, there is no constitutional right to be free from a child abuse investigation, <u>see</u> <u>Croft v.</u>

15  <u>Westmoreland County Children & Youth Servs.</u>, 103 F.3d 1123, 1125 (3d Cir. 1995), nor is there

16  a constitutional right to have a child abuse investigation conducted in a particular way.

17  <u>Devereaux</u>, 263 F.3d at 1075.

18        In <u>Gausvik</u>, the evidence revealed that a police officer investigating allegations of child

19  abuse inaccurately stated in his probable cause affidavit that the children tested "positive" for child

20  abuse (when the tests were only "suggestive" or "consistent" with child abuse) and incorrectly

21  stated that eight children accused the plaintiff of child abuse when, in fact, only two had positively

22  identified him. 345 F.3d at 817.  The Ninth Circuit held that although the affidavit "may have been

23  careless or inaccurate," it did not show that the officer continued the investigation despite

24  knowing that plaintiff was innocent. <u>Id.</u>  Qualified immunity was therefore appropriate on the

25  falsification-of-evidence claim. <u>Id.</u>  Likewise, in <u>Devereaux</u>, a foster father was investigated and

26  prosecuted for alleged sexual abuse of foster children living in his home. 263 F.3d at 1073.  The

27

ORDER — 18

1   detective investigating the case employed aggressive interviewing techniques, including lengthy

2   interviews of young children. Id. at 1073. Some of the children initially denied abuse, but when

3   questioned further ultimately accused Devereaux of abusing them. Id. at 1077. The Ninth Circuit

4   upheld the district court's grant of qualified immunity, holding that plaintiff did not have a right to

5   an error-free child abuse investigation. Id. at 1075-77. The court noted that interviewers of child

6   witnesses of suspected abuse must be permitted to exercise some discretion in deciding when to

7   accept initial denials and when to reject them and proceed further with the investigation. Id. at

8   1077. Because there is no constitutional right to have a child abuse investigation carried out in a

9   particular way, and because plaintiff failed to make the requisite showing for a deliberate

10  fabrication-of-evidence claim, qualified immunity was warranted. Id. at 1075-77.

11          Here, Plaintiff asks the Court to assume that because the agency and its employees made

12  recording errors and misstatements, they deliberately fabricated evidence against her. Even

13  looking at the evidence in the light most favorable to Ms. Costanich, Plaintiff has not raised a

14  material issue of fact on the issue of whether Defendants deliberately fabricated evidence. The

15  evidence suggests that Ms. Duron conducted a careless and error-prone investigation and that her

16  superiors and co-workers failed to correct the errors that arose during the investigation. But the

17  evidence does not show that she or any of the defendants intentionally manufactured a case

18  against Ms. Costanich. Like in Gausvik and Devereaux, because Plaintiff has not shown that any

19  of the defendants deliberately fabricated false evidence, all of the individually named defendants

20  are entitled to qualified immunity.

21  **V.    Procedural Due Process**

22          Defendants assume that, in addition to her falsification-of-the-evidence claim, Plaintiff is

23  also asserting a procedural due process claim against them. To make out a procedural due

24  process claim, a plaintiff must allege (1) a liberty or property interest protected by the

25  Constitution, (2) a deprivation of that interest by the government, and (3) lack of process.

26  Portman v. County of Santa Clara, 995 F.2d 898, 904 (9th Cir. 1993). Here, Plaintiff never

27

ORDER — 19

1  alleges a lack of process. Nor could she — Plaintiff received notice of the claims against her, a

2  nineteen day administrative hearing, an appeal to the DSHS review board, and multiple appeals in

3  state court. Indeed, the process served her well — she won in front of the ALJ, the superior

4  court, and the court of appeals. To the extent that she is alleging a procedural due process claim,

5  Defendants are granted summary judgment on that claim.

6  **VI.    State Law Claims**

7         The Court declines to exercise supplemental jurisdiction over the remaining state law

8  claims. See 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental

9  jurisdiction over a claim [over which it has supplemental jurisdiction] if . . . (3) the district court

10 has dismissed all claims over which it has original jurisdiction . . . ."). The Court has granted

11 summary judgment to Defendants on the claims over which the Court has original jurisdiction.

12 The remaining state law tort claims are better resolved in the state courts. The remaining claims

13 involve issues related to a state social services agency acting in the areas of the state foster care

14 system and state guardianship proceedings — matters better suited for consideration in the state

15 courts. These types of issues are preeminently matters of state law and are traditionally handled

16 by state courts. See Elk Grove Unified Sch. Dist. v. Newdow, 542 U.S. 1., 12-13 (2004) (noting

17 that the Court customarily declines to intervene in domestic relations matters and observing that

18 "[t]he whole subject of the domestic relations of husband and wife, parent and child, belongs to

19 the laws of the States and not to the laws of the United States"). The four remaining state claims

20 are therefore dismissed without prejudice.

21                                    **Conclusion**

22        The Court GRANTS IN PART and DENIES IN PART Defendants' motion for summary

23 judgment and DENIES Plaintiff's motion for summary judgment. Defendant DSHS is not a

24 "person" subject to § 1983 liability. And the individually named defendants are immune from

25 Plaintiff's federal claims. The Court declines to exercise supplemental jurisdiction over Plaintiff's

26 state law tort claims, and dismisses those claims without prejudice.

27

ORDER — 20

1    The clerk is directed to send a copy of this order to all counsel of record.

2    Dated: February 19, 2008.

3

4    _____

5    Marsha J. Pechman
     United States District Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

ORDER — 21